REVISED - June 18, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-50642

_____


UNITED STATES OF AMERICA,

                         Plaintiff-Appellee,

v.

BILLY MEL ALFORD,

                         Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

May 28, 1998

Before WISDOM, KING, and DAVIS, Circuit Judges.

KING, Circuit Judge:

Defendant-appellant Billy Mel Alford appeals his conviction and sentence for four counts of importation of marijuana in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) and four counts of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). For the reasons set forth below, we affirm in part, vacate in part, and remand.

## I. FACTUAL BACKGROUND

On January 9, 1997, Billy Mel Alford was charged in a two-count indictment with importation of marijuana and possession of

marijuana with intent to distribute on or about November 27, 1996. Alford was arraigned on this indictment on February 4, 1997. On February 27, 1997, Alford was charged in a ten-count superseding indictment. Counts 1 and 2 of the superseding indictment charged Alford with importation of marijuana and possession of marijuana with intent to distribute in or about February 1996; counts 3 and 4 charged him with importation of marijuana and possession of marijuana with intent to distribute on or about April 22, 1996; counts 5 and 6 charged him with importation of marijuana and possession of marijuana with intent to distribute between on or about May 26, 1996 and June 2, 1996; counts 7 and 8 charged him with importation of marijuana and possession of marijuana with intent to distribute on or about October 29, 1996; and counts 9 and 10 charged him with importation of marijuana and possession of marijuana with intent to distribute on or about November 26, 1996. The government concedes that the offenses charged in counts 9 and 10 were based upon the same conduct that formed the basis of counts 1 and 2 of the original indictment. Alford's trial commenced on April 28, 1997. On the same date, Alford filed a motion to dismiss the superseding indictment on the ground that trying him on the indictment would violate the Speedy Trial Act, 18 U.S.C. §§ 3161-74, and the Speedy Trial Plan for the Western District of Texas. The district court denied the motion. The jury convicted Alford on counts 3 through 10 of the indictment and acquitted him on

2

counts 1 and 2.  Alford concedes that sufficient evidence exists to support the convictions.

Alford's presentence investigation report (PSR) determined Alford's offense level to be 40 and his criminal history category to be III, which subjected him to a Sentencing Guidelines range of 360 months to life imprisonment.  See UNITED STATES SENTENCING GUIDELINES MANUAL ch. 5, pt. A (Sentencing Tbl.) (1995).  The PSR calculated Alford's base offense level as 34, based upon a determination that 3108 kilograms of marijuana were attributable to Alford in relation to the offenses of conviction.  See id. § 2D1.1.  The PSR recommended a two-level upward adjustment for possession of a dangerous weapon, see id. § 2D1.1(b)(1), and a four-level upward adjustment based on Alford's role as an organizer or leader of criminal activity involving five or more participants or that was otherwise extensive, see id. § 3B1.1(a). The PSR also noted that the district court might consider an upward departure pursuant to § 4A1.3 of the Guidelines if it found that Alford's criminal history category of III did not adequately reflect the seriousness of Alford's criminal past or his propensity for committing future crimes.

Alford objected to the PSR's calculation of his base offense level on the ground that insufficient evidence supported the amount of marijuana that the PSR attributed to him.  He also objected to the PSR's recommendation of an increase in his offense level for possession of a dangerous weapon.  The district

3

court sustained Alford's objection to the increase for possession of a dangerous weapon but overruled his objection regarding the amount of marijuana attributable to him. The court then concluded that an upward departure was warranted on the following grounds:

> [I]n studying this presentence report, it occurs to me that the criminal history category in this matter doesn't really show up the seriousness of this particular crime. It's a criminal history category of III, and my problem with that is it doesn't adequately show the convictions that Mr. Billy Mel Alford had for sale and delivery of marijuana in the 204th District Court of Dallas County in 1977, in the cause numbers that are set forth, 7701, 526, 527 and 528. When you put these marijuana convictions which were excluded because they were pretty far back, really they went back of his previous conviction that Mr. Alford suffered in my Court. So based on his previous history of convictions in '77, based on his convictions here in the District Court of the Western District, Pecos Division, all for marijuana, I find that Mr. Alford was at least 18 years old, that the instant offense is a felony that deals with a controlled substance. I further find that Mr. Alford has at least two prior felony convictions of either a crime of violence or a controlled substance. And in this instance, it would be a controlled substance. I find that the criminal history category of III doesn't adequately represent Mr. Alford's career offenses, and so I am going to sentence him under, given the two-point reduction for the gun, under an offense level of 38 and a criminal history category of VI, because I believe, having Mr. Alford before, watched him operate, seen his modus operandi, that he is indeed a career offender.

Alford did not object to the district court's decision to increase his criminal history category. The Guidelines imprisonment range for an offense level of 38 and a criminal history category of VI is 360 months to life. See id. ch. 5, pt. A (Sentencing Tbl.). The district court imposed concurrent

sentences of 480 months' imprisonment on each count of conviction to be followed by a five-year period of supervised release.  The district court also imposed a $200,000 fine ($25,000 per count of conviction) and an $800 special assessment ($100 per count of conviction).  Alford filed a timely notice of appeal.

## II.  DISCUSSION

On appeal, Alford challenges his judgment of conviction and sentence on the following three grounds:

1.   the district court erred in denying his motion to dismiss the superseding indictment based upon his statutory right to a speedy trial;

2.   the district court abused its discretion in increasing his criminal history category to VI; and

3.   the district court erred in concluding that more than 3000 kilograms of marijuana were attributable to him.

We address each of these issues in turn.

## A.  The Speedy Trial Act

The Speedy Trial Act generally requires that the trial of a criminal defendant "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever

5

date last occurs." 18 U.S.C. § 3161(c)(1); see also United States v. Bermea, 30 F.3d 1539, 1566 (5th Cir. 1994). However, the Act tolls the seventy-day clock for certain statutorily enumerated periods of delay. See 18 U.S.C. § 3161(h); Bermea, 30 F.3d at 1566.

Alford contends that the district court's denial of his motion to dismiss the superseding indictment violated his statutory right to a speedy trial because his trial commenced approximately eighty-four days after his arraignment on the initial indictment.[1] He contends, and the government concedes, that none of this time was excludable under the tolling provisions contained in § 3161(h). Alford therefore argues that the district court was required to dismiss the superseding indictment. See 18 U.S.C. § 3162(a)(2) ("If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant.").

By conceding that more than seventy non-excludable days transpired between Alford's arraignment and the commencement of his trial, the government essentially concedes that a Speedy Trial Act violation occurred with respect to counts 9 and 10 of

---

[1] Both parties agree that Alford's arraignment constituted his first appearance before a judicial officer of the court where the indictment was pending.

the superseding indictment.  In <u>United States v. Gonzales</u>, 897

F.2d 1312, 1316 (5th Cir. 1990), we held that

> [t]he filing of a superseding indictment does not
> affect the speedy-trial clock for offenses charged in
> the original indictment or any offense required under
> double jeopardy principles to be joined with the
> original offenses.  The seventy-day speedy-trial period
> continues to run from the date of the original
> indictment or arraignment, whichever was later, and all
> speedy-trial exclusions apply as if no superseding
> indictment had been returned.  This rule prevents the
> government from circumventing the speedy-trial
> guarantee by restarting the speedy-trial clock by
> obtaining superseding indictments with minor
> corrections.

<u>Id.</u> at 1316 (citations omitted).  Thus, because Alford's trial

did not commence within seventy days after Alford's first

appearance before a judicial officer of the court where the

original indictment was pending, counts 9 and 10 of the

superseding indictment, which were offenses charged in the

original indictment, were subject to dismissal.

However, counts 1 through 8 of the superseding indictment

were not charged in the original indictment, and Alford has not

attempted to--nor can he--establish that double jeopardy concerns

required the government to try the offenses alleged in counts 1

through 8 along with counts 9 and 10.  <u>See</u> <u>United States v.</u>

<u>Register</u>, 931 F.2d 308, 312-13 (5th Cir. 1991) (holding that a

defendant charged with two counts of possession of cocaine with

intent to distribute occurring on separate dates could not

establish that prosecution on both counts constituted double

jeopardy without proving that the cocaine forming the basis of

7

each count came from the same "stash"); United States v. Marable, 578 F.2d 151, 153 (5th Cir. 1978) ("To support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense.").  This case therefore forces us to confront a question that we expressly left open in Gonzales:  "whether a new speedy-trial clock begins for new offenses charged in the superseding indictment [that the double jeopardy clause would not require the government to join with the original charges], when the indictment retains some of the original charges."  Gonzales, 897 F.2d at 1316.  We answer this question in the affirmative and join two other circuits that have done the same.  See United States v. Kelly, 45 F.3d 45, 48 (2d Cir. 1995); United States v. Lattany, 982 F.2d 866, 872 n.7 (3d Cir. 1992).

It is clear that, as to charges that the government is not required to join with the offenses charged in the original indictment, the government may obtain a fresh speedy trial clock by simply waiting until completion of the prosecution for the charges contained in the original indictment and beginning a new prosecution on the additional charges.  We see no logical basis for concluding that, when the government chooses to add in a superseding indictment charges that it is not required to join with the charges contained in the original indictment, it must bring the defendant to trial on the added charges within the time period remaining on the speedy trial clock applicable to the

8

charges contained in the original indictment. Under the construction of the Speedy Trial Act that we adopt, the defendant is guaranteed that his trial on a particular charge is brought within seventy non-excludable days of the later of his indictment on the charge or his first appearance before an officer of the court where the charge is pending. Where, as here, the defendant is not brought to trial on the superseding indictment within seventy non-excludable days of the later of the defendant's first appearance or the filing of the original indictment, the counts in the superseding indictment that were contained in the original indictment (or those that the double jeopardy clause requires to be joined with them) are subject to dismissal.

Well under seventy days transpired between the filing of the superseding indictment and Alford's trial. We therefore conclude that, as to counts 1 through 8 of the superseding indictment, no Speedy Trial Act violation occurred. However, Alford's trial on counts 9 and 10 violated the Act. Accordingly, we vacate the district court's judgment of conviction and sentence on counts 9 and 10 and remand for dismissal of these counts of the indictment.

A dismissal for violation of the Speedy Trial Act may be with or without prejudice, see 18 U.S.C. § 1362(a)(2), and the Act prefers neither remedy over the other, see United States v. Johnson, 29 F.3d 940, 945 (5th Cir. 1994). While we may in some circumstances make the determination of the appropriate type of

9

dismissal ourselves, see id., as a general rule, "the trial court is best situated to decide whether to dismiss indictments with or without prejudice in light of a Speedy Trial Act violation." United States v. Blackwell, 12 F.3d 44, 48 (5th Cir. 1994) (emphasis omitted); see also United States v. Willis, 958 F.2d 60, 64 (5th Cir. 1992) ("The district court is best situated to decide whether to dismiss with prejudice. We reverse the convictions for violation of the Speedy Trial Act but leave to the district court the nature of that dismissal."); United States v. Melguizo, 824 F.2d 370, 371 (5th Cir. 1987) ("[T]he decision whether to dismiss a complaint under the Speedy Trial Act with or without prejudice is entrusted to the sound discretion of the district judge . . . ." (internal quotation marks omitted)). We therefore remand to the district court so that it may determine whether the dismissal of counts 9 and 10 of the superseding indictment should be with or without prejudice. The Speedy Trial Act provides that, in making this determination,

> the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2).

## B. Increase in Criminal History Category

Alford next argues that the district court erred in increasing his criminal history category from III to VI. He

10

contends that the court's reasons for the departure do not comply with the requirements for upward departures in this Circuit. Specifically, he argues that the district court did not explain why intermediate criminal history categories were not appropriate as required by United States v. Lambert, 984 F.2d 658 (5th Cir. 1993) (en banc), and that his sentence should therefore be vacated and the case remanded for resentencing.

We generally review a district court's decision to depart from the Guidelines for an abuse of discretion. See United States v. McKenzie, 991 F.2d 203, 204 (5th Cir. 1993). However, Alford did not object to the upward departure in the district court. "Under Federal Rule of Criminal Procedure 52(b), this court may correct forfeited errors only when the appellant shows that (1) there is an error, (2) the error is plain, and (3) the error affects her substantial rights." United States v. Ravitch, 128 F.3d 865, 869 (5th Cir. 1997) (citing United States v. Olano, 507 U.S. 725, 732-35 (1993)). Even if the appellant satisfies these factors, "the decision to correct the forfeited error falls within this court's sound discretion," and we will not exercise that discretion to correct a forfeited error "unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. Applying the plain error standard, we have held that, in circumstances in which the trial court could reinstate the same sentence were the case remanded, the defendant's sentence is sustainable even though

11

"the district court's stated reasons for departing evidence a mistaken application of the Sentencing Guidelines." Id.; see also United States v. Brunson, 915 F.2d 942, 944 (5th Cir. 1990). Put another way, under the plain error standard of review, "we will uphold a defendant's sentence if on remand the district court could reinstate the same sentence by relying on a reasonable application of the Sentencing Guidelines." Ravitch, 128 F.3d at 871.

The district court may depart from the otherwise applicable Guidelines range if reliable information indicates that the defendant's criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. See U.S. SENTENCING GUIDELINES MANUAL § 4A1.3. When departing on the basis of § 4A1.3, "the district court should consider each intermediate criminal history category before arriving at the sentence it settles upon; indeed, the court should state for the record that it has considered each intermediate adjustment." Lambert, 984 F.2d at 662. Id. However, this court does not

> require the district court to go through a ritualistic exercise in which it mechanically discusses each criminal history category it rejects en route to the category that it selects. Ordinarily the district court's reasons for rejecting intermediate categories will clearly be implicit, if not explicit, in the court's explanation for its departure from the category calculated under the guidelines and its explanation for the category it has chosen as appropriate.

Id. at 663.

12

Alford's criminal history points placed him in criminal history category III.  See U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (Sentencing Tbl.).  Three of Alford's criminal history points resulted from a prior conviction of ten counts of possession of marijuana with intent to distribute and one count of conspiracy to possess marijuana with intent to distribute. Additionally, he had six criminal convictions, three of which were drug convictions, that were not considered in the criminal history computation because of their age.  See id. § 4A1.2(e). The district court could reasonably conclude that a criminal history category of III did not adequately reflect the seriousness of Alford's criminal history or his propensity for recidivism.  See id. § 4A1.2 Application Note 8 ("If the court finds that a sentence imposed outside th[e] time period [imposed by § 4A1.2(e)] is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3 . . . .").  Further, it was not unreasonable for the district court to conclude that an increase of more than one in Alford's criminal history category was warranted.  Assuming merely for the sake of argument that the district court's statement of the reasons for its departure was inadequate under Lambert (i.e., assuming that the reasons that the district court chose a criminal history category of VI as opposed to an intermediate category were not implicit in its stated reasons for

13

the departure), were we to remand the case, the district court could properly impose the same sentence by stating on the record that it had considered the intermediate criminal history category of IV and determined that a category of V was appropriate.[2]  We therefore conclude that the district court's upward departure did not constitute plain error warranting a vacation of Alford's sentence and resentencing on counts 3 through 8.

### C.  Amount of Marijuana Attributed to Alford

Alford finally contends that the district court erred in concluding that more than 3000 kilograms of marijuana were attributable to him for sentencing purposes.  The district court's calculation of the quantity of drugs involved in an offense is a factual determination.  See United States v. Ponce, 917 F.2d 841, 842 (5th Cir. 1990); United States v. Rivera, 898 F.2d 442, 445 (5th Cir. 1990).  "Factual findings regarding sentencing factors are entitled to considerable deference and will be reversed only if they are clearly erroneous."  United States v. Watson, 966 F.2d 161, 162 (5th Cir. 1992).  "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole."  United States v. Sanders, 942 F.2d 894, 897 (5th Cir. 1991).

---

[2]  The district court could impose the same sentence were it to raise Alford's criminal history category only to V because the same Guidelines range--360 months to life--applies to an offense level of 38 with a criminal history category of V or VI.  See U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A.

14

"[A] presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making the factual determinations required by the sentencing guidelines." Id. at 898. A district court may adopt facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence. See United States v. Puig-Infante, 19 F.3d 929, 943 (5th Cir. 1994). "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." United States v. Valencia, 44 F.3d 269, 274 (5th Cir. 1995); see also United States v. Ruiz, 43 F.3d 985, 989 (5th Cir. 1995); Puig-Infante, 19 F.3d at 943.

In this case, the district court accepted the PSR's conclusion that 3108 kilograms of marijuana were attributable to Alford in relation to the charged offenses. Alford challenges the reliability of the PSR's calculation, arguing that it was based in part on the testimony of Paul Preston, Alford's coconspirator, who stated on cross-examination that the unseized quantities of marijuana that he testified were involved in some of the charged offenses were guesses and that the actual quantities could have been smaller. Alford argues that, because Preston characterized the amounts to which he testified as guesses and acknowledged that the actual quantities could have been smaller, the district court should have erred on the side of assuming smaller quantities for sentencing purposes.

15

We conclude that the district court did not clearly err in calculating the amount of marijuana attributable to Alford. The fact that Preston's testimony was somewhat imprecise did not preclude reliance on it for sentencing purposes because a district court may consider "estimates of the quantity of drugs for sentencing purposes." United States v. Sherrod, 964 F.2d 1501, 1508 (5th Cir. 1992). Preston's testimony that the amounts involved could have been smaller than the amounts that he stated on direct examination is merely an acknowledgment that the amounts to which he testified were estimates rather than exact figures. Moreover, Alford presented no rebuttal evidence establishing that the information in the PSR regarding the amount of marijuana attributable to him was materially untrue. As such, the district court's determination that 3108 kilograms of marijuana were attributable to Alford was not implausible on this record and therefore not clearly erroneous.

### III.  CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment of conviction and sentence on counts 9 and 10 of the superseding indictment and REMAND for dismissal of those two counts and a determination of whether the dismissal should be with or without prejudice. We AFFIRM the district court's judgment of conviction and sentence in all other respects.

16